UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

HENRY LEE SMITH, JR.,

       Defendant.
_____/

Case No. 22-cr-20351

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**(1) DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (Dkt. 18) AND (2) GRANTING DEFENDANT'S MOTION TO SUPPLEMENT RECORD (Dkt. 30)**

Defendant Henry Lee Smith Jr. is charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and other offenses. See Indictment (Dkt. 9).[1] Smith moves to dismiss the felon-in-possession charge, arguing that § 922(g)(1) is unconstitutional under the Second Amendment (Dkt. 18). For the reasons that follow, the Court denies Smith's motion.[2]

**I. BACKGROUND**

This Court has already set forth the facts of this case at length. See 1/20/23 Op. & Order (Dkt. 32). The felon-in-possession charge grows out of Smith's alleged possession of multiple guns found at a residence where he was staying, and his alleged hiding and retrieval of a firearm in an alleyway following Smith's suspected participation in a drive-by shooting. Id. at 2–3. Also

---

[1] In addition to felon-in-possession, Smith is charged with possession of a controlled substance and possession of a firearm in furtherance of a drug trafficking crime. Indictment.

[2] In addition to Smith's motion to dismiss, the briefing includes the Government's response (Dkt. 24). Smith also filed a motion to supplement the record with a notice of supplemental authority (Dkt. 30), to which the Government filed a response (Dkt. 33); the Court grants Smith's motion to supplement the record. The Court held a hearing on December 21, 2022 on Smith's motion to dismiss and two search-related motions he had filed.

1

pertinent to the instant motion are Smith's prior felony convictions, which include receiving and concealing stolen property and possessing a controlled substance. See Mot. at 2–3; Resp. at 2.

Smith is charged with violating 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person" "who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce[] any firearm or ammunition . . . !" § 922(g)(1). Smith argues that § 922(g)(1) violates the Second Amendment under the analysis set forth by the United States Supreme Court in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).

## II. ANALYSIS

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Under Bruen, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Bruen, 142 S. Ct. at 2129–2130.

In conducting the Bruen analysis as applied to Smith, this Court must acknowledge strong indications from the Supreme Court that § 922(g)(1) survives Second Amendment scrutiny. Before Bruen, there was no question that Congress could disallow felons from possessing firearms without violating the Constitution. See District of Columbia v. Heller, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."); McDonald v. City of Chicago, Ill., 561 U.S. 742, 786 (2010) ("repeat[ing] th[is] assurance[]"). To the extent that these Supreme Court comments

2

constitute dicta, this Court is nonetheless "obligated to follow" that dicta. A.C.L.U. of Kentucky v. McCreary Cnty., Ky., 607 F.3d 439, 447 (6th Cir. 2010) (punctuation modified).[3]

Bruen—which found that a state could not require applicants for unrestricted handgun licenses to demonstrate a special need for self-protection—does not upset the long-established understanding that § 922(g)(1) is constitutional. In its opening sentence, the majority opinion in Bruen reaffirms the Second and Fourteenth Amendment rights of "ordinary, law-abiding citizen[s]" recognized in Heller and McDonald. 142 S. Ct. at 2122 (emphasis added). The second sentence, too, refers to the rights of "ordinary, law-abiding citizens." Id. The majority opinion goes on to couch its holding in the context of "law-abiding" citizens an additional nine times. See id. at 2125–2156.

The concurrences of justices who joined this opinion are more explicit. Justices Kavanaugh and Roberts reassert that "'[n]othing in [Bruen] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'" Id. at 2162 (Kavanaugh, J., concurring) (quoting Heller, 554 U.S. at 626 and McDonald, 561 U.S. at 786). Justice Alito emphasizes that Bruen does not "disturb[] anything that we said in Heller or McDonald . . . about restrictions that may be imposed on the possession or carrying of guns," id. at 2157 (Alito, J., concurring), and he reiterates that Bruen's holding is limited to the rights of "law-abiding people," id. at 2159 (Alito, J., concurring).

---

[3] Prior to Bruen, and not by way of dicta, the United States Court of Appeals for the Sixth Circuit held that prohibitions on felons' possession of firearms do not violate the Second Amendment. See United States v. Carey, 602 F.3d 738, 741 (6th Cir. 2010). Even though the Supreme Court's mode of analysis for Second Amendment challenges has changed since the issuance of Carey, this Court is not free to ignore binding precedent. See Salmi v. Sec'y of Health & Hum. Servs., 774 F.2d 685, 689 (6th Cir. 1985).

Given these pronouncements, it is difficult to see how the Bruen analysis could mandate a finding that a felon-in-possession prohibition violates the Constitution. Indeed, as this Court proceeds below through the considerations identified in Bruen, it finds Smith's position unmeritorious.

**A. Whether Second Amendment's Plain Text Covers Smith's Conduct**

Smith considers it self-evident that the plain text of the Second Amendment covers his conduct, as the Second Amendment applies to "the people," which "'unambiguously refers to all members of the political community, not an unspecified subset.'" Mot. at 10–11 (quoting Heller, 554 U.S. at 580).

It is not so clear, however, that Smith—having broken the law—is still a member of that community. The Government submits that the protections of the Second Amendment do not apply to felons. See Resp. at 8. Bruen states that "ordinary, law-abiding, adult citizens [] are part of 'the people' whom the Second Amendment protects." 142 S. Ct. 2111 at 2134 (citing Heller, 554 U.S. at 580). Thus, at the very least, "there is some doubt" as to whether the prohibitions in § 922(g) are "textually covered by the Second Amendment, insofar as it has been interpreted to guarantee the right to keep and bear arms to ordinary, law-abiding, responsible citizens concerned with self-defense." United States v. Daniels, No. 1:22-cr-58-LG-RHWR-1, 2022 WL 2654232, at *2 (S.D. Miss. July 8, 2022) (finding that § 922(g)(3)'s prohibition on firearm possession for unlawful users and addicts of controlled substances survived Bruen analysis).

Given the clear limitation of Bruen's holding to law-abiding citizens, the Court finds this position sufficient to defeat Smith's argument. As the court in United States v. Ingram explained:

> By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in Heller and McDonald clarifies [sic] the bounds of the plain text of the Second Amendment. This, coupled with the majority's focus in Bruen on the Second Amendment rights of "law-

4

abiding citizens" throughout the opinion convinces this Court that the Supreme Court would conclude that these statutes fail to infringe on any Second Amendment rights. No. CR 0:18-557-MGL-3, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022) (denying motion to dismiss § 922(g) and § 922(c) charges on Second Amendment grounds).

Having been convicted of felonies, Smith is not an "ordinary, law-abiding" citizen. Bruen, 142 S. Ct. 2111 at 2134. Because the plain text of the Second Amendment—informed by the Supreme Court's discussion of the Second Amendment's scope—does not cover Smith, the Court finds his motion without merit.

Even if the Court were to assume that the Second Amendment applies to Smith, he cannot survive the next prong of the Bruen analysis.

**B. Whether Felon-in-Possession Prohibition is Consistent with Historical Tradition of Firearm Regulation**

To carry its burden of demonstrating that § 922(g)(1) is consistent with a historical tradition of firearm regulation, the Government may present "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." Bruen, 142 S. Ct. 2111 at 2131–2132 (punctuation modified). Bruen emphasizes that "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them,'" id. at 2136 (quoting Heller, 554 U.S. at 634–635) (emphasis in Bruen), and notes that the Second and Fourteenth Amendments were adopted in 1791 and 1868, respectively, id.

Smith argues that the Government cannot demonstrate that felon-in-possession prohibitions are consistent with any founding-era regulatory tradition. He submits that such prohibitions date back to no earlier than 1938 at the federal level, see Mot. at 11–12 (citing Federal Firearms Act, c. 850, § 2(f), 52 Stat. 1250, 1251 (1938)), and he cites sources advising that states did not ban gun ownership in the eighteenth and nineteenth centuries, see id. at 12–14. The

5

Government contends that "'the eighteenth-century American's right to bear arms was intimately tied to long-standing practices that explicitly separated the class of armed law-abiding citizens from felons.'" Resp. at 15 (quoting Folajtar v. Att'y Gen. of the United States, 980 F.3d 897, 904 (3d Cir. 2020) (finding § 922(g)(1) constitutional before Bruen)).

Given the Supreme Court's direction on the constitutionality of felon-in-possession statutes discussed above, this Court does not consider extensive historical discussion essential to resolving Smith's argument. The court in United States v. Price—after deciding that the plain text of the Second Amendment applied to a felon charged with possessing a firearm—did "not find it necessary to engage in the historical analysis test articulated in Bruen as to 18 U.S.C. § 922(g)(1)." No. 2:22-cr-00097, 2022 WL 6968457, at *8 (S.D.W. Va. Oct. 12, 2022) (finding § 922(g)(1) constitutional). Rather, the court was "convinced that the Supreme Court left generally undisturbed the regulatory framework that keeps firearms out of the hands of dangerous felons through its decision in Bruen by reaffirming and adhering to its reasoning in Heller and McDonald." Id.; see also United States v. King, No. 21-cr-255 (NSR), 2022 WL 5240928, at *5 (S.D.N.Y. Oct. 6, 2022) (finding § 922(g)(1) constitutional based on Bruen, McDonald, and Heller without engaging in independent analysis of historical tradition).

Nonetheless, as several courts have observed, felon-in-possession prohibitions have sufficient grounding in historical tradition to withstand a challenge under Bruen. Daniels references a pre-Bruen survey of historical sources establishing that "§ 922(g)'s restriction on possession of firearms by felons . . . has a long and established history in English and American common law." 2022 WL 2654232, at *3 (citing United States v. Emerson, 270 F.3d 203, 226 n.21 (5th Cir. 2001) (compiling secondary sources reflecting that "[c]olonial and English societies of the eighteenth century . . . have excluded . . . felons" from possessing firearms and that "the

6

Founders [did not seem to] consider[] felons within the common law right to arms or [to] intend[] to confer any such right upon them") (punctuation modified)); see also United States v. Yancey, 621 F.3d 681, 684–685 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'").

The court in United States v. Nutter observed that the founding-era "historical record reflects significant regulation of firearms designed to ensure responsible and safe gun ownership." No. 2:21-CR-00142, 2022 WL 3718518, at *6 (S.D.W. Va. Aug. 29, 2022). In finding that the prohibition on possession of firearms by persons convicted of misdemeanor crimes of domestic violence under 18 U.S.C. §§ 922(g)(9) and 924(a)(2) did not violate the Second Amendment, the court reasoned that such a prohibition was in keeping with the Second Amendment's purpose and the history of keeping firearms out of the hands of dangerous people:

> The prohibition of possession of firearms by domestic violence misdemeanants, and other groups identified as dangerous, is supported by history. See, e.g., Lawrence Rosenthal, The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control, 92 Wash. U.L. Rev. 1187, 1239 (2015) ("[H]istory suggests that when the legislature restricts the possession of firearms by discrete classes of individuals reasonably regarded as posing an elevated risk for firearms violence, prophylactic regulations of this character should be sustained."); Carlton F.W. Larson, Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1377 (2009) (citing historical examples for the proposition that "any person viewed as potentially dangerous could be disarmed by the government without running afoul of the 'right to bear arms.'"); Glenn Harlan Reynolds, A Critical Guide to the Second Amendment, 62 Tenn. L. Rev. 461, 480 (1995) (application of the Second Amendment limited to "virtuous" citizens).

Id. at *7. A similar reading of history was expressed by Justice Barrett—as a judge on the Seventh Circuit—when she opined that "[h]istory . . . does support the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous." Kanter v. Barr, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J. dissenting).

7

Deciphering history is always a fraught enterprise—as demonstrated dramatically in the 5-to-4 disagreement in Heller as to whether the Second Amendment established a personal right to bear arms. An honest search for an "American" tradition on gun regulation is especially challenging, given that well over half of the American population—including women, Blacks, and others—were generally excluded by law from political participation at the time of the Second Amendment's passage and for decades thereafter.[4] No matter how difficult the investigation of relevant Second Amendment history may be in other contexts, the conclusion is clear that disarming persons deemed dangerous has been grounded in the heartland of acceptable gun regulation since our Nation's founding. Ignoring this history would disregard the admonition of the Supreme Court that "while the Constitution protects against invasions of individual rights, it is not a suicide pact." Kennedy v. Mendoza-Martinez, 372 U.S. 144, 160 (1963).

The prohibition on firearm possession by felons under § 922(g)(1) does not violate the Second Amendment. Every decision addressing this question with which this Court is familiar has found that this statute survives Bruen, including one issued in this district. See United States v. Burrell, No. 21-20395, 2022 WL 4096865, at *3 (E.D. Mich. Sept. 7, 2022) (denying motion to dismiss § 922(g)(1) charge under Bruen and observing that "substance" of motion was "unsound"). Smith has identified no contrary authority. The felon-in-possession charge against him stands.

---

[4] With respect to the search for the American tradition on gun regulation, Bruen gives no guidance on how courts should evaluate the political landscape of an America some two centuries removed from the present, with political exclusions utterly intolerable today. It did, however, consider the political nature of some governmental structures, finding that not all local governments are created equal. Specifically, it assigned "little weight" to the enactments of territorial governments because of the "transitory nature" of such governments." 142 S. Ct. at 2155. Future Supreme Court pronouncements may well give more guidance on how the search for the American tradition should be conducted.

### III.  CONCLUSION

For the reasons explained above, the Court denies Smith's motion to dismiss (Dkt. 18).

SO ORDERED.

Dated: February 24, 2023                                     s/Mark A. Goldsmith
           Detroit, Michigan                                       MARK A. GOLDSMITH
                                                                          United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 24, 2023.

                                                                          s/Erica Parkin on behalf of
                                                                          Karri Sandusky, Case Manager